In re Will of A. J. BADGETT.

(Filed 4 November, 1931.)

**1. Wills D j—The correct form of the one issue of devisavit vel non is sufficient to present all issuable matters to the jury.**

Where upon the trial of a caveat to a will two issues, one of mental capacity and the other of undue influence, are raised for the determination of the jury with conflicting evidence as to each, and the judge has fully charged the jury upon the evidence and there is but one issue submitted to the jury, a verdict for the propounders will be construed as an answer both as to mental capacity and undue influence, and no reversible error will be found on appeal.

**2. Appeal and Error J e—Exception to exclusion of testimony will not be considered where it does not appear what testimony would have been.**

Upon an exception to the exclusion of evidence by the trial judge the record on appeal must show what the proposed testimony would have been in order for the appellate court to pass upon it, and where the record does not so show the exception will not be considered on appeal.

**3. Same—Exception to the exclusion of evidence will not be sustained where substantially the same evidence is later admitted.**

An exception to the exclusion of evidence will not be sustained where it appears that substantially the same evidence was later admitted of which the appellant received the benefit.

APPEAL by caveators from *Harwood, Special Judge,* at March Special Term, 1931, of SURRY. No error.

The issue submitted to the jury and their answer thereto, were as follows: "Is the paper-writing propounded and introduced in evidence, and every part thereof, the last will and testament of A. J. Badgett, deceased? Answer: Yes."

The court below signed judgment in accordance with the verdict. The caveators made numerous exceptions and assignments of error and appealed to the Supreme Court.

*H. O. Woltz for caveators.*
*Folger & Folger for propounders.*

CLARKSON, J. The testator, A. J. Badgett, when he executed his will, in conformity with the statute, on 12 October, 1929, was about 76 years of age and died on 2 February, 1930. He had three sons and two daughters living at his death.

Robert married in 1901 and left the testator's home. Thomas married in 1902 and about 5 years thereafter left home. George married in 1910 and shortly thereafter left home. Two daughters, Rosella and

Bertha Badgett (who married one Paul McConnell), have lived on the land mentioned in the will all their lives except a short time, when Bertha taught school. They have both lived with their father since their mother died 28 January, 1919. They attended to all the household duties, and also matters connected with the farm, and worked some in the field. Rosella, at the time of her father's death was about 43 years of age, and has been a cripple since she was 6 years of age. At the time of the execution of the will, George was the owner of 59 acres of land, Robert 258 acres, and Thomas the owner of some land, the evidence not disclosing the quantity.

Robert Badgett testified: "Rosella was feeble a long time like she is now, but she worked." Among other things, the draftsman of the will testified: "He (testator) said: 'I can't figure much with a pencil, but I can figure in my head, and if the boys would account for what I have given them and interest was counted on that and I should have paid the girls for the work they have done since they became of age, and they had put the money in the bank on interest, I figure I have not given them any more than I have the boys, and I want you to put part of that in the will, explaining why.' He said: 'George owes me a little money, now $130.00, and I don't want him to pay that and I want the note given back to him and I want that stated in the will.'"

Bertha Badgett McConnell, testified, in part: "Me and my sister did the work. We worked in the field when it was necessary, if it was loading hay or cutting tobacco, and I have gone to the field and helped him haul wood and his boys could have done it if they would. There never has been a day's washing done at home except when my mother died that I didn't help do it. I worked under my father's direction. He directed about the farm—rented the land and collected the rents. I kept the accounts and accounted up his accounts, under his advice, and turned the money over to him, but when we were settling, it was in his presence. I was in the room on 12 October, 1929, when the paper-writing was written. In my opinion my father had sufficient mental capacity to know what his property was, who his relatives were, what claim they had upon him, if any, and, if he had wanted to dispose of his property, to whom he intended to give it."

Testator had about 300 acres of land. He left his two daughters executrices of his will. In his will he gave to his son George the $130.00, and in Item 3, is the following: "Since I have helped my other children to get started in life and since Bertie Badgett McCormick (McConnell) and Rozella Badgett have lived with me all their lives and have helped me and my deceased wife in our old age and sickness, I will, devise and bequeath unto said Bertie Badgett McCormick (Mc-

Connell) and Rozella Badgett, my two girls, all my real and personal property including money on hand and in banks, land, household and kitchen furniture, and such tools, horses, notes, accounts and any and all other real and personal property of whatsoever kind and description that I own at the time of my death, to have and to hold the same to them and their heirs in fee simple forever, share and share alike, in one-half of said property to each of them."

The sons caveated the paper-writing propounded as the last will and testament of A. J. Badgett on the ground (1) undue influence on the part of the two daughters, particularly one of them, (2) that the testator did not have sufficient mental capacity to execute same. Only one issue was submitted to the jury, but the court below charged the law arising on the facts fully as to the undue influence and lack of mental capacity.

*In re Creecy,* 190 N. C., 301, the issues submitted to the jury were on both aspects. The jury in the present case, having answered the issue "Yes," it is presumed that they found that testator had the mental capacity to make the will, and there was no undue influence. Many of the exceptions and assignments of error made by caveators do not disclose what the witnesses would have testified to if permitted to answer the questions objected to. We cannot assume that the answers would have been favorable to the caveators. The record must disclose what the witnesses would have testified to, if permitted, so this Court can determine the materiality. *Snyder v. Asheboro,* 182 N. C., 710; *Guano Co. v. Ball et al., ante,* 534.

Many of the exceptions and assignments of error made by the caveators to the admission and exclusion of evidence, we think immaterial and have no relation to the issue, and properly excluded. Also incompetent evidence was excluded. *In re Mann,* 192 N. C., 248.

It appears that much of the evidence excepted to and for which assignments of error were made by caveators, was later admitted or was substantially before the jury to be considered by them. There were numerous witnesses on both sides of the controversy who testified. Some that he did and some that he did not possess sufficient mental capacity to know what property he had, who his relations were and what claims they had upon him, if any, and if he wanted to dispose of his property to whom he intended to give it. The controversy hinged mainly on questions of fact, which it is the province of the jury to pass on. The court below gave a most elaborate charge of the law on every aspect of the case and correctly applied the law to the facts in the case, to which no exception was taken. On the entire record, we see no prejudicial or reversible error.

No error.